## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WALDISA DE ALVARENGA BARBOSA, HELIO COSTA, GILMARA DE SOUZA COSTA, MARIA APARECEDIA COSTA BARBOSA, CONSOLACAO DE SOUSA, ADRIANA GOMES DA SILVA REIS, DELVANIA GONCALVES, AND GENILDA RODRIGUES CLEMENTE,** Individually and on behalf of all other persons similarly situated, | Civil Action No. |
| *Plaintiffs,* | |
| v. | |
| **KELLERMEYER BERGENSONS SERVICES, LLC,** | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiffs, Waldisa De Alvarenga Barbosa, Helio Costa, Gilmara De Souza Costa, Maria Aparecedia Costa Barbosa, Consolacao de Sousa, Adriana Gomes da Silva Reis, Delvania Goncalves, and Genilda Rodrigues Clemente, individually and on behalf of all other persons similarly situated, through counsel, by way of Complaint, allege as follows:

## NATURE OF ACTION

1.     Plaintiffs, on behalf of themselves and all others similarly situated, bring this collective / class action against Defendant Kellermeyer Bergensons Services, LLC ("KBS"), to recover unpaid overtime wages due under the Federal Fair Labor Standards Act and New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq*.

2.     KBS claims it is North America's largest privately-owned facility services provider, servicing more than 100,000 locations in all 50 states.

3.     At all times, Plaintiffs, and those similarly situated, worked for KBS as janitorial service workers at warehouse facilities located in New Jersey, and throughout the country.

4.      At all times, KBS knowingly failed to pay overtime premium compensation, time-and-a-half overtime compensation, owed to the Plaintiffs and those similarly situated for hours worked in excess of 40 hours per workweek, as required by both federal and state law.

5.      The members of the collective are all persons who are or were employed by KBS to perform janitorial services in warehouse facilities in the United States who were not paid overtime for work performed in excess of 40 hours per workweek.

6.      In addition, Plaintiffs also seek damages on behalf of a Rule 23(b)(3) opt-out class pursuant to New Jersey law for those janitorial services workers who worked for KBS during the relevant time period in New Jersey and were not paid overtime for work performed in excess of forty (40) hours per workweek.

**PARTIES**

7.      Plaintiff, Waldisa De Alvarenga Barbosa, is an adult individual residing in the City of Philadelphia, in the Commonwealth of Pennsylvania, and, at all times, was an employee of KBS.

8.      Plaintiff, Helio Costa, is an adult individual residing in the City of Philadelphia, in the Commonwealth of Pennsylvania, and, at all times, was an employee of KBS.

9.      Plaintiff, Gilmara De Souza Costa, is an adult individual residing in the City of Philadelphia in the Commonwealth of Pennsylvania, and, at all times, was an employee of KBS.

10.     Plaintiff, Maria Aparecedia Costa Barbosa, is an adult individual residing in the City of Philadelphia, in the Commonwealth of Pennsylvania, and, at all times, was an employee of KBS.

11.     Plaintiff, Consolacao de Sousa, is an adult individual residing in the City of Philadelphia, in the Commonwealth of Pennsylvania, and, at all times, was an employee of KBS.

12.     Plaintiff, Adriana Gomes da Silva Reis, is an adult individual residing in the City

of Philadelphia, in the Commonwealth of Pennsylvania, and, at all times, was an employee of KBS.

13.    Plaintiff, Delvania Goncalves, is an adult individual residing in in the City of Philadelphia in the Commonwealth of Pennsylvania, and, at all times, was an employee of KBS.

14.    Plaintiff, Genilda Rodrigues Clemente, is an adult individual residing in the City of Philadelphia in the Commonwealth of Pennsylvania, and, at all times, was an employee of KBS.

15.    KBS is limited liability company incorporated in the State of Delaware, and is located at 3605 Occean Ranch Boulevard, Suite 200, Oceanside, CA 92056.

16.    At all times, KBS was, and is, an employer whose employees are engaged throughout the United States, including the Commonwealth of Pennsylvania and the State of New Jersey.

17.    Upon information and belief, KBS, is the largest privately held provider of facility services, including contracted cleaning and janitorial services to industry clients, in North America.

**JURISDICTION AND VENUE**

18.    Jurisdiction is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332.

19.    KBS is a foreign corporation.

20.    At all times, KBS purposely established significant contacts in Pennsylvania, have carried out, and continue to carry out, substantial continuous and systematic business activities in Pennsylvania and this judicial district.

21.    This Court also has subject matter jurisdiction over this case based on federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiffs' claims are based on federal law, namely the FLSA. *See* 29 U.S.C. § 216(b).

22.     This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts, namely, the loss of wages suffered by Plaintiffs and class members.

23.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS RELEVANT TO ALL CLAIMS

24.     KBS claims to be North America's largest privately-owned facility service providers.  KBS provides cleaning services at 100,000 client locations in all 50 states.

25.     KBS boasts on its website that its "employees come to work each day with a great attitude, ready to deliver superior service to our clients. Our dedication to our people means we offer opportunities to pursue career growth, development, and leadership. We deeply value our employees and are committed to creating a best-in-class workplace with competitive salaries and benefits." *See* https://www.kbs-services.com/about/careers/.

26.     At all times, KBS provided janitorial services to an Amazon Fulfillment Center, located at 50 New Canton Way, Robbinsville Township, New Jersey.

27.     In supplying those services, KBS employed Plaintiffs as hourly paid, non-exempt employees to perform janitorial services.

28.     In so doing, KBS exercised control over Plaintiffs' and the Class's wages, hours, working conditions, and employment status.

29.     KBS had the power to hire and fire, supervise and control Plaintiffs' and the Class's work schedule and/or conditions of employment, determine their rate of pay, and maintain their employment records.

30.     KBS required that Plaintiffs and the putative Class wear vests with the KBS insignia on them while performing janitorial services at the various facilities around the country, including the Amazon fulfillment center in New Jersey:



*Plaintiff, Waldisa De Alvarenga Barbosa,*
*in her KBS issued work vest at the Amazon facility*

31.    KBS employed various managers and supervisors at the various facilities to direct and control the Plaintiffs' work.

32.    KBS's managers and supervisors at the Amazon facility included employees by the names of Damaris Santana, Claudia (last name presently unknown), Jaurez (last name presently unknown), Arturo (last name presently unknown), Gabrielle (last name presently unknown), and Gabriel Nogueria.

33.    Plaintiffs and the putative class members were told by these various KBS managers and supervisors to clock-in and out using an app on their smart phones. Plaintiffs were also instructed not to enter overtime on the app. Rather, requests for overtime pay would be submitted exclusively using a paper form.

34.    Despite KBS's claims about the work of "its employees" as well as its supervision and control over these employees, and instructions on how each employee was to track the time they worked providing cleaning services on its behalf, and the issuance of KBS's uniforms, KBS used strawmen to issue the Plaintiffs' paychecks. The entities identified on the paychecks are:

- MS Janitorial Services Inc., located at 260 Union Ave, Apt. 39, Framingham, MA, 01702.

- First Action Cleaning Inc., located at 15 Canterbury St., Ludlow, MA 01056.

- Denali Cleaning Services Inc., located at 37 Wilson St. Apt. #2, Hartford, CT 06106.

- Unlimited Janitorial Services LLC, located at 46 Arnold St., Hartford CT 06106

35.    None of these entities are registered to do business in New Jersey where the Amazon facility is located.

36.    MS Janitorial Services and First Action Cleaning are Massachusetts based entities that were both dissolved in December 2021.

37.    Denali Cleaning Services does not appear to have ever properly incorporated in Connecticut, its state of residence.

38.    The only entity that is properly incorporated is Unlimited Janitorial Services, but only in Connecticut, not New Jersey.

39.    Despite KBS providing day-to-day instruction and supervision in all material respects, Plaintiff Gilmara de Souza Costa was paid by three (3) separate entities (MS Janitorial, Denali Cleaning, and Unlimited Janitorial Services), at varying times between July 29, 2021, and October 6, 2023.

40.    Plaintiff de Souza Costa was never informed by KBS why she received her pay checks from these three (3) different entities at varying times and not from KBS.

41.    Similarly, although pictured in a KBS uniform above, Plaintiff Waldisa De Alvarenga Barbosa, received her checks from First Action Cleaning, Inc. and MS Janitorial Services between September 2020 and May 2021.

42.    While performing janitorial services at KBS's direction, Plaintiffs and class

members regularly worked more than 40 hours a week and as a matter of federal and state law were entitled to overtime compensation.

43.    Upon information and belief, KBS was advised by skilled lawyers and other professionals, employees and advisors knowledgeable about the federal wage and hour act laws, as well as New Jersey's labor and wage law, employment and personnel practices, and about the requirements of New Jersey law.

44.    KBS willfully, knowingly, and intentionally failed to provide overtime compensation owed to Plaintiffs and class members. For example, KBS, by its respective representatives, agents, ostensible agents, servants, workmen and/or employees, consistently told Plaintiffs and members of the punitive class that they are not entitled overtime compensation.

45.    KBS knew or should have known that Plaintiffs and class members were entitled to receive certain wages for overtime compensation and that they were not receiving certain wages for overtime compensation.

46.    Upon information and belief, KBS knew or should have known that they had a duty to maintain accurate and complete payroll records in accordance with both federal and state law, but willfully, knowingly, and intentionally failed to do so.

**FACTUAL ALLEGATIONS –
PLAINTIFF WALDISA DE ALVARENGA BARBOSA**

47.    Plaintiff Waldisa De Alvarenga Barbosa was hired and employed as a custodian by the KBS in or around February 2020 until July 2021.

48.    Plaintiff Waldisa De Alvarenga Barbosa's primary duties included, without limitation, cleaning, picking up and removing trash, and general maintenance of warehouse work areas.

49.    At the time of hire, KBS's employee-manager Gabriel Nogueria informed

Plaintiff Waldisa De Alvarenga Barbosa she would not be paid overtime.

50.    Plaintiff Waldisa De Alvarenga Barbosa typically worked 11 ½ hours per day and 7 days per week.

51.    At the time of Plaintiff Waldisa De Alvarenga Barbosa's employment, she was compensated approximately $15.00 per hour.

52.    Throughout Plaintiff Waldisa De Alvarenga Barbosa's employment with KBS, Plaintiff consistently worked 40 hours or more each week.

53.    Throughout Plaintiff Waldisa De Alvarenga Barbosa's employment with KBS, even though she was not exempt, she was not paid overtime for this additional labor.

### FACTUAL ALLEGATIONS –
### PLAINTIFF HELIO COSTA

54.    Plaintiff Helio Costa was hired and employed as a custodian, by KBS in or around May 2021 through March 31, 2022, and again in or around January 2024 through June 28, 2024.

55.    Plaintiff Helio Costa's primary duties included, without limitation, throwing away refuse, and general maintenance of warehouse work areas.

56.    Plaintiff Helio Costa typically worked approximately 11 hours per day and 6 to 7 days per week.

57.    At the time of Plaintiff Helio Costa's employment, he was compensated approximately $14.00-18.00 per hour.

58.    Throughout Plaintiff Helio Costa's employment with KBS, Plaintiff consistently worked 40 hours or more each week.

59.    Throughout Plaintiff Helio Costa's employment with KBS, even though he was not exempt, he was not paid overtime for this additional labor.

## FACTUAL ALLEGATIONS –
## PLAINTIFF GILMARA DE SOUZA COSTA

60.    Plaintiff Gilmara De Souza Costa was hired and employed as a custodian by KBS in or around March 2021 through April 2022, and again in or around May 2023 through November 2023.

61.    Plaintiff Gilmara De Souza Costa's primary duties included, without limitation, cleaning, picking up and removing trash, and general maintenance of warehouse work areas.

62.    Plaintiff Gilmara De Souza Costa's duties were supervised by KBS's employee-manager Gabrielle, whose last name is currently unknown.

63.    Plaintiff Gilmara De Souz Costa initially worked 12 hours per day and 6 days per week.

64.    Plaintiff Gilmara De Souz Costa was initially compensated $14.00 per hour.

65.    At the time Plaintiff Gilmara De Souz Costa's employment ended, she worked 11 hours per day and 5 to 6 days a week and was compensated $18.00 per hour.

66.    Throughout Plaintiff Gilmara De Souz Costa's employment with KBS, she consistently worked 40 hours or more each week.

67.    Throughout Plaintiff Gilmara De Souz Costa's employment with KBS, even though she was not exempt, she was not paid overtime for this additional labor.

## FACTUAL ALLEGATIONS –
## PLAINTIFF MARIA APARECEDIA COSTA BARBOSA

68.    Plaintiff Maria Aparecedia Costa Barbosa was hired as a custodian and employed by KBS in or around September 2020 through March 30, 2020, and returned on or around March 18, 2023 through November 16, 2023.

69.    Plaintiff Maria Aparecedia Costa Barbosa's primary duties included, without limitation, cleaning, picking up and removing trash, and general maintenance of warehouse work

areas.

70.    Plaintiff Maria Aparecedia Costa Barbosa typically worked 10 ½ hours per day and 5 to 6 days per week. At the time of Plaintiff Maria Aparecedia Costa Barbosa's employment, she was compensated approximately $14-18 per hour.

71.    Throughout Plaintiff Maria Aparecedia Costa Barbosa's employment with KBS, Plaintiff consistently worked 40 hours or more each week.

72.    Throughout Plaintiff Maria Aparecedia Costa Barbosa's employment with KBS, even though she was not exempt, she was not paid overtime for this additional labor.

**FACTUAL ALLEGATIONS –**
**PLAINTIFF CONSOLACAO DE SOUSA**

73.    Plaintiff Consolacao de Sousa was hired and employed as a custodian by KBS in or around March 2022 through August 2023.

74.    Plaintiff Consolacao de Sousa's primary duties included, without limitation, cleaning, picking up and removing trash, and general maintenance of warehouse work areas.

75.    Plaintiff Consolacao de Sousa typically worked 10 hours per day and 7 days per week.

76.    At the time of Plaintiff Consolacao de Sousa's employment with KBS, she was compensated approximately $18.00 per hour.

77.    Throughout Plaintiff Consolacao de Sousa's employment with KBS, Plaintiff consistently worked 40 hours or more each week.

78.    Throughout Plaintiff Consolacao de Sousa's employment with KBS, even though she was not exempt, she was not paid overtime for this additional labor.

**FACTUAL ALLEGATIONS –**
**PLAINTIFF ADRIANA GOMES DA SILVA REIS**

79.    Plaintiff Adriana Gomes da Silva Reis was hired and employed as a custodian by

KBS in or around August 2020 to March 2022.

80.    Plaintiff Adriana Gomes da Silva Reis's primary duties included, without limitation, cleaning, picking up and removing trash, and general maintenance of warehouse work areas.

81.    Plaintiff Adriana Gomes da Silva Reis typically worked 12 hours per day and 6 to 7 days per week.

82.    At the time of Plaintiff Adriana Gomes da Silva Reis's employment with KBS, she was compensated approximately $12.50-14.00 per hour.

83.    Throughout Plaintiff's employment with KBS, Plaintiff Adriana Gomes da Silva Reis consistently worked 40 hours or more each week.

84.    Throughout Plaintiff Adriana Gomes da Silva Reis's employment with KBS, even though she was not exempt, she was not paid overtime for this additional labor.

**FACTUAL ALLEGATIONS –
PLAINTIFF DELVANIA GONCALVES**

85.    Plaintiff Delvania Goncalves was hired and employed as a custodian by KBS in or around May 2021 to June 2021, and again in or around August 2021 to January 2022.

86.    Plaintiff Delvania Goncalves's primary duties included, without limitation, cleaning, picking up and removing trash, and general maintenance of warehouse work areas.

87.    Plaintiff Delvania Goncalves typically worked 12 hours per day and 7 days per week.

88.    At the time of Plaintiff Delvania Goncalves's employment with KBS, she was compensated approximately $14.00 per hour.

89.    Throughout Plaintiff Delvania Goncalves's employment with KBS, Plaintiff consistently worked 40 hours or more each week.

11

90.     Throughout Plaintiff Delvania Goncalves's employment with KBS, even though she was not exempt, she was not paid overtime for this additional labor.

## FACTUAL ALLEGATIONS –
## PLAINTIFF GENILDA RODRIGUES

91.     Plaintiff Genilda Rodrigues was hired and employed as a custodian by KBS in or around December 2023 until June 2024.

92.     Plaintiff Genilda Rodrigues's primary duties included, without limitation, disinfecting cafeterias and bathrooms, picking up and removing trash, and general maintenance of warehouse work areas.

93.     Plaintiff Genilda Rodrigues typically worked 11 hours per day and 7 days per week.

94.     At the time of Plaintiff Genilda Rodrigues's employment with KBS, she was compensated approximately $18.00 per hour.

95.     At the time of Plaintiff Genilda Rodrigues's employment with KBS, KBS's employee Arturo, whose last name is presently unknown, directed Plaintiff Genilda Rodrigues to only log her straight-pay hours into KBS's digital time keeping application. The remainder of her overtime labor were physically recorded on KBS's forms.

96.     Throughout Plaintiff Genilda Rodrigues's employment with KBS, Plaintiff Genilda Rodrigues consistently worked 40 hours or more each week.

97.     At all times, Plaintiff Genilda Rodrigues worked under the direction of Defendant KBS's supervisor Damaris Santana.

98.     Throughout Plaintiff Genilda Rodrigues employment with KBS, even though she was not exempt, she was not paid overtime for this additional labor.

## COLLECTIVE ACTION ALLEGATIONS

99.    Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis.

100.    Plaintiffs seek to bring claims under the FLSA, 29 U.S.C. § 216(b), individually and on behalf of a collective opt-in class preliminarily defined as:

> All current and former hourly-paid direct employees of KBS who are/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 during each seven-day workweek for the time period of three years preceding the date this lawsuit was filed and forward.

101.    Plaintiffs have personal knowledge that other putative Collective Action Members were not paid overtime as required by federal law.

102.    The putative Collective Action Members are similarly situated to Plaintiffs and to one another, within the meaning of Section 216(b) of the FLSA.

103.    The putative Collective Action Members are not exempt from receiving overtime premium pay under the FLSA.

104.    KBS's failure to pay overtime wages results from generally applicable policies or practices and does not depend on the personal circumstances of the putative Collective Action Members.

105.    The specific job titles or precise job responsibilities of each putative collective action member do not prevent collective treatment.

106.    Although the exact amount of damages may vary among the putative Collective Action Members, their respective damages are easily calculable using a simple formula uniformly applicable to all of them.

107.    Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a collective action.

108.    Plaintiffs reserve the right to establish sub-classes and/or modify class notice

language as appropriate in any motion to certify a collective action or other proceeding.

109.    Plaintiffs further reserve the right to amend the definition of the putative class, or subclasses therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## CLASS ACTION ALLEGATIONS

110.    Plaintiffs also bring this action on their own behalf, as well as on behalf of a Fed. R. Civ. P. 23(b)(3) opt-out class for those Class Members who are subject to the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq*.

111.    Plaintiffs seek to represent a proposed Class of similarly situated individuals who are current and former employees of KBS in New Jersey, currently defined as follows:

> All persons who have been employed by KBS as hourly-paid janitorial employees or employed in other positions with similar job titles and/or duties in New Jersey at any time from January 1, 2020 until the date of trial ("Class").

112.    Plaintiffs reserve the right to redefine the Class and to add additional subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

113.    The individuals in the proposed Class are so numerous that joinder of all members is unfeasible and impracticable, pursuant to under Rule 23(a)(1).

114.    Currently, the membership of the entire class is unknown to Plaintiffs. However, the class is estimated to be greater than 100 individuals and the identity of such membership is readily ascertainable by inspection of KBS's employment records.

115.    Common questions of law and fact exists as to all members of the proposed Class, including but not limited to:

(i)    Whether KBS failed and/or refused to pay minimum wages and overtime premiums to the proposed Class;

(ii)    Whether KBS employed the members of the Proposed Class within the meaning of N.J.S.A. 34:11-56a *et seq.*;

14

(iii)  Whether the members of the Proposed Class are non-exempt employees entitled to overtime payment under N.J.S.A. 34:11-56a *et seq.* for all hours in excess of 40 hours in any given work week;

(iv)  Whether KBS's actions, inactions, failures or refusals violated N.J.S.A. 34:11-56a4, as alleged by Plaintiffs;

(v)   Whether KBS's actions, inactions, failures or refusals were willful violations of N.J.S.A. 34:11-56a4, as alleged by Plaintiffs;

(vi)  Whether KBS failed to keep accurate time records for all hours worked by members of the Proposed Class; and

(vii) The proper measure of damages sustained by the members of the proposed Class.

116.  Plaintiffs' claims are typical of those of the proposed Class.

117.  The questions of law and fact common to the Class predominate over any questions solely affecting individual members of the proposed Class.

118.  Plaintiffs will fairly and adequately represent the interests of the Class, as they are directly impacted by KBS's acts and omissions and the interests of the named plaintiffs are not antagonistic to the proposed class as a whole, and have retained counsel experienced in wage and hour and class action litigation.

119.  A class action is superior to other methods for fairly and efficiently adjudicating this dispute.

## CAUSES OF ACTION

### COUNT I
### Federal Fair Labor Standards Act
### On Behalf of the Collective Action

120.  Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

121.  At all relevant times, KBS is/was an eligible and covered employer under the FLSA. See 29 U.S.C. § 203(d).

122.  At all times relevant to this lawsuit, KBS has been an enterprise engaged in

commerce under the FLSA as a "named enterprise." See 29 U.S.C. § 203(s)(1)(B).

123.    Plaintiffs and putative Collective Action Members are/were employees of KBS pursuant to the FLSA. 29 U.S.C. § 203(e).

124.    Plaintiffs and putative Collective Action Members were not exempt from overtime under the FLSA.

125.    Plaintiffs and putative Collective Action Members are/were paid on an hourly basis by KBS.

126.    At times relevant to this lawsuit, Plaintiffs and putative Collective Action Members work/worked in excess of 40 hours per 7-day workweek as employees of KBS.

127.    Plaintiffs and putative Collective Action Members are/were not paid for all compensable hours of work when they worked for KBS.

128.    KBS is/was required to pay Plaintiffs and putative Collective Action Members time and one-half their respective regular rates of pay for all hours worked over 40 in each relevant 7-day workweek. 29 U.S.C. § 207(a)(1).

129.    KBS failed to pay Plaintiffs and putative Collective Action Members one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit in violation of the FLSA.

130.    29 U.S.C. § 211(c) provides in relevant part:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports there from to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

131.    29 C.F.R. § 516.2 further requires that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and the total hours worked by each employee during the workweek.

132.    To the extent that KBS failed to maintain all records required by the aforementioned statute and regulations and failed to furnish to Plaintiffs and the putative Collective Action Members comprehensive statements showing the hours they worked during the relevant time period, KBS also violated the law in that regard.

133.    When an employer fails to keep accurate records of hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687-88 is controlling.

134.    The *Anderson* rule states:

> [W]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer failed to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

135.    The United States Supreme Court set forth the above standard to avoid allowing the employer to benefit by failing to maintain proper records.

136.    Where damages are awarded pursuant to the standard in *Anderson*, "[t]he employer cannot be heard to complaint that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id*.

137.    Putative Collective Action Members are/were similarly situated to Plaintiffs and to each other under the FLSA. 29 U.S.C. § 216(b).

138.    KBS's violation of the FLSA, as described above, is/was willful within the

17

meaning of 29 U.S.C. § 255(a).

139.    At all times, KBS was aware that Plaintiffs and putative Collective Action Members were not paid overtime premium pay at the rate of time and one-half their respective regular rates of pay for all hours worked over forty in a seven-day workweek.

140.    Plaintiffs and putative Collective Action Members specifically plead recovery for the time period of 3 years preceding the date this lawsuit was filed and forward for their FLSA claim as the result of KBS's willful conduct. See 29 U.S.C. § 255(a).

141.    Plaintiffs and putative Collective Action Members seek all damages available for KBS's failure to timely pay all overtime wages owed, including back wages, liquidated damages, reasonable attorneys' fees and costs, and post-judgment interest.

**COUNT II**
**Unpaid Overtime Wages Under New Jersey Wage and Hour Law**
**On Behalf of the Rule 23(b)(3) Class Only**

142.    Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

143.    At all times, Plaintiffs and members of the Proposed Class were "employees" and KBS was a "employer" within the meaning of the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq*.

144.    At all times relevant to this action, KBS was required under the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a4 to pay the Plaintiffs and those similarly situated at a rate not less than 1 ½ times Plaintiffs' regular wage rates for all hours the Plaintiffs worked in excess of 40 hours in a workweek.

145.    At all times, KBS had a policy and practice of refusing to pay overtime compensation to Plaintiffs and proposed class members at one and one-half their regular rate of pay.

146.    At all times, KBS acted willfully or with reckless disregard as to their obligation to pay 1 ½ times Plaintiffs' regular rate of pay for hours worked in excess of 40 per week, and, accordingly, the violation was willful for purposes of the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a4.

147.    As a result of KBS's Wage and Hour Law violations, Plaintiffs and proposed class members are entitled to recover from KBS unpaid overtime wages and liquidated damages, as well as reasonable attorneys' fees and the costs of this action, including interest, pursuant to N.J.S.A. 34:11-56a *et seq*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant Kellermeyer Bergensons Services, LLC, as follows:

a)    For an order certifying the collective opt-in action and the Rule 23(b)(3) New Jersey opt-out Class and appointing Plaintiffs and Plaintiffs' counsel to represent the classes;

b)    For an order awarding Plaintiffs and the classes actual damages, including unpaid overtime pay permitted by law pursuant to the FLSA and the New Jersey Wage and Hour Law, liquidated damages, and prejudgment interest as a result of the wrongful conduct complained of herein;

c)    For an order awarding Plaintiffs and the classes reasonable attorneys' fees and costs of suit, including expert witness fees; and

d)    For an order awarding such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

The Plaintiffs and putative classes hereby demand trial by a jury of all issues triable by right.

DATED: October 23, 2024      BY:    */s/ Patrick Howard*
                      Patrick Howard (PA Atty ID #88572)
                      Larry Bendesky (PA Atty ID #51026)
                      Adam J. Pantano (PA Atty ID #85261)
                      Scott Fellmeth (PA Atty ID #321505)
                      **SALTZ MONGELUZZI BENDESKY**
                      One Liberty Place, 52nd Floor
                      1650 Market Street
                      Philadelphia, PA 19103
                      Tel:(215) 575-3986

                      *Counsel for Plaintiffs and*
                      *the Proposed Class*